Thomson, J.,
delivered the opinion of the court.
This is a suit upon a sheriff’s bond. The defendant F. M. Tate was in November, 1891, elected sheriff of Prowers county, and before entering upon the duties of his office executed to the People of the State of Colorado a bond in the penal sum of $6,000, with the defendants James Graham, Martin Graham, and C. H. Frybarger as sureties, which was approved as the statute requires. During the November term, 1891, of the district court of Prowers county, Edith P. Craddock recovered a judgment in that court against John E. Godding, which, as is alleged, was assigned in writing to the relator for a valuable consideration. The relator caused an execution to be issued upon the judgment to the defendant *203 Tate as sheriff, who thereupon caused to be collected from the execution defendant, upon the execution, $518.36, which he failed and refused to pay to the relator. One of the defenses is that the money was collected by C. D. Baldwin, the undersheriff, and that the money was garnished in his hands by the State Bank of Rocky Ford, upon a judgment recovered by it in the county court of Otero county, against Edith P. Craddock, for $586.25. The summons in garnishment was served upon Baldwin by J. A. Woodcock, the coroner of Prowers county, to whom execution upon the judgment had been issued and directed. To the interrogatories submitted, Baldwin answered that he had in his possession and under his control $518.36, which he had collected upon the execution issued in the ease of Craddock v. Godding,'and judgment was rendered against him upon his answer. He thereupon paid to the coroner the amount of the judgment.
At the trial of this cause, to prove the assignment to the relator, a witness was introduced who testified that he had a limited acquaintance with the handwriting of Edith P. Craddock, and that from that acquaintance he believed the signature to the assignment to be hers. It was objected that he. had not shown himself qualified to testify as to her signature, but the objection was overruled. The same objection is urged here. We think the witness testified to a sufficient acquaintance with the assignor’s handwriting to admit his testimony, and to require counter proof from the defendants. But the specific denial in the answer relating to the assignment is not so framed as to require proof upon the subject. The defendants deny that Edith P. Craddock for a good and valuable consideration sold and assigned the judgment to the relator. This is a negative pregnant. The utmost effect it can have is to admit the assignment and-deny the sufficiency of the consideration, but in our opinion the question of consideration is immaterial. If the proceedings in garnishment set up in the answer would constitute no defense as against the judgment plaintiff herself, then they are unavailing as *204 against her assignee, whether the assignment was with or without consideration.
A discussion of the question, which would otherwise be important, to what extent under the laws of this state a sheriff may be subject to garnishment in respect of money held by him in his official capacity, is unnecessary, because in this ease the sheriff was not garnished.
First: The execution upon which the garnishment was made was issued to the coroner, and the summons in garnishment was served by him. A coroner can exercise the powers and perform the duties of the sheriff only in certain specified cases. If there is no sheriff in" an organized county, the coroner acts as such until one is appointed or elected. If the sheriff is a party to the case in which the process issues, the writ is served and executed by the coroner. When affidavit is made by a party to an action, his agent or attorney, that the sheriff will not, by reason of partiality, prejudice, consanguinity or interest, faithfully perform his duties in the suit, the process must be directed to the coroner. Gen. Stats., 1883, secs. 612, 613, 614. There are no other conditions upon which the coroner is authorized to perform any of the duties of the sheriff. The defendant Tate was the sheriff of Prowers county, he was not a party to the case in which the execution issued, and there was no affidavit made that he might not for any cause faithfully perform his duties in the premises. No reason is shown why the execution was not issued to the sheriff. If the money could be garnished in his hands, he could levy the execution upon it. Where the acts of the coroner in the performance of the sheriff’s duties are relied upon in support of a claim or defense, the existence of some one of the statutory conditions of his authority must be made affirmatively to appear. The service by the coroner of the garnishment process upon Baldwin was a nullity, and, as against the relator, the judgment in the proceeding was void.
Second: The summons in garnishment was not served upon the sheriff, and he was not a party to the garnishment pro *205 ceeding. The answer of Baldwin set forth that the money Avas collected by virtue of an execution issued upon the judgment recovered by Edith P. Craddock, and while he answered that it was in his possession, yet, as a matter of law, it Avas not. The undersheriff is a general deputy, appointed by the sheriff to hold during the latter’s pleasure. The sheriff is responsible for his default or misconduct. His official acts are the official acts of the sheriff, and are done in his name. Money collected by the undersheriff upon execution is in law in the possession of the sheriff, and it is the sheriff, and not the undershériff, who is liable to the creditor for its misappropriation. The sheriff must pay the money over to the execution creditor, and has no right to know any other claimant, unless a lien has, in virtue of some legal process, attached to the fund. As the money is in law in his hands, the lien must fasten upon it in his hands, and he must be a party to any proceeding by which the lien is sought to be created. The garnishment of the undersheriff could not act upon the fund, because in law he neither possessed not controlled it, and the judgment against him, as garnishee, for the amount, was unauthorized. The rights of the relator, or of his assignor, were in no manner affeeted by it. Terwilliger v. Wheeler, 35 Barb. 620; Hampton v. Brown, 13 Ired. L. 18; Strickland v. Smith, 53 Ga. 79; Murfree on Sheriffs, sec. 554.
If this were a suit by Dewees against the sheriff alone for a violation of his official duty, the garnishment proceedings would be no defense. They would not excuse him for withholding the money. But the foundation of the action is his bond, and the liability of the obligors upon that instrument is limited by the terms of their contract. The bond in suit is conditioned as follows :
“ Now, therefore, the condition of this obligation is such that if the said F. M. Tate shall well and faithfully perform the duties and, calling of said office according to law and turn over all moneys, books, and papers that may come into his hands as such officer, to his successors in office, then this *206 obligation shall be void, otherwise to be and remain, in full force and effect.”
The conditions of the bond required b.y.the statute are that the sheriff shall well and faithfully perform and execute the, duties of his office, without fraud, deceit or oppression, pay over all moneys that may come into his hands as sheriff, and deliver to his successor all writs, papers and other things pertaining to his office, which may be so required by law. Gen. Stats., sec. 594.
It is the second condition of the statutory bond which applies to money collected by the sheriff, and it is the second -condition of the bond in suit which undertakes to direct the disposition to be made by Tate of money received by him as an officer. It requires him to turn the money over, not to the party entitled to it, but to his successors in office, so that the condition was not broken by his failure to pay it to the relator. In fact, payment to the relator would have been a breach of the condition. In order to avoid a breach, he must violate a duty with which he is charged by law. But this suit is upon that bond, and there can be no recovery upon it outside of its terms. It is a practically worthless piece of paper, and why it was accepted and approved as the official bond of the sheriff we are unable to conjecture, but we must take it as it is, and not as it ought to be.
The sheriff is personally liable to the aggrieved party for his retention of the money; but this suit, being upon the bond, mustiail. The judgment will be reversed.

jReversed.