No. 12,287.

NEWMYER *v.* TAX SERVICE CORPORATION ET AL.

(289 Pac. 365)

Decided June 2, 1930.

Messrs. McComb & Strong, for plaintiff in error.

Mr. Clarence L. Ireland, Mr. R. H. Blackman, for defendants in error.

*In Department.*

Mr. Justice Burke delivered the opinion of the court.

These parties appear here in the same order as in the trial court. We hereinafter refer to them as Mrs. Newmyer, the Tax Corporation, the county, and the treasurer, respectively, and to the husband of plaintiff in error as Mr. Newmyer.

Dacre Dunn failed to pay taxes levied on his land for the years 1914, 1915, 1916, and 1919, and the treasurer neglected to offer it for sale. Shortly after the last mentioned date Mr. Newmyer acquired the title. In 1923 the failure to sell for the 1919 tax was discovered, and December 17 of that year the land was sold therefor to Mrs. Newmyer. In 1925 the first three failures were discovered, and February 16 of that year the land was sold to the Tax Corporation for the 1914 tax. Thereafter those for 1915, 1916, 1923 and 1924 were paid in full by it and were endorsed on this certificate.

October 21, 1925, Mrs. Newmyer sold her certificate for the 1919 tax, and five days later took a deed from her husband for the fee. Claiming that her purchase for the 1919 tax "cut out" or discharged the lien of those for 1914, 1915 and 1916, she brought this action to enforce her alleged right to redeem without paying them. No deeds had been issued on any of the sales.

Three questions raised by the assignments are: The validity of the sale for the 1919 tax; the admissibility of evidence to show cause why the date of that sale did not

conform to the statute; and the right of plaintiff to amend her complaint to allege that cause. But if, as we think, Mrs. Newmyer is not in a position to claim any rights or make any defense based upon that sale, these assignments require no consideration.

■■■ If Mr. Newmyer had bought at the sale for the tax of 1919 he could acquire no rights based thereon, since it was his duty to pay his taxes. If he were still the owner of the fee he could not defend against the sales for the taxes of 1914, 1915 and 1916 on the ground that some stranger had bought his land at the sale for the tax of 1919. That law is well settled and no authorities need be cited. Public policy will not permit a delinquent taxpayer to acquire any rights based upon his own wrong.

What knowledge Mrs. Newmyer actually had, or is charged with, concerning unpaid taxes for the three earlier years, when in 1923 she bought her husband's land for the tax of 1919, is immaterial. Such rights, if any, as she obtained by that purchase were adverse to the fee and passed to her successor when she sold her certificate. When she thereafter bought the fee from her husband she not only had actual knowledge of this outstanding certificate which she had just sold, but of the certificate for the 1914 tax, issued eight months before, and the subsequent endorsements thereon. In other words, she bought her husband's title, knowing that six years unpaid taxes stood against it, that it had actually been sold for those of 1914 and 1919, and that those certificates, with the others endorsed thereon, were held by different persons. With that knowledge she stepped into her husband's shoes and claims the right to force the holder of the later certificate for the earlier tax to relinquish to her because, she says, his rights are cut out by the earlier certificate for the later tax.

■ The question thus presented is simply this, If the land of a delinquent be sold to various purchasers for the unpaid taxes of a series of years, may the owner slip

from the entire burden by merely redeeming from the last sale? If so here is indeed "a new way to pay old debts."

Assuming that the self evident collusion between husband and wife to escape these taxes cannot be here considered because it is not pleaded, it would still seem that a statement of the absurdity of the contention of the plaintiff should be a sufficient answer thereto. However, the standing of her counsel, the plausibility of his argument, the respectability of his authorities, and the applicability of one of these, call for further comment.

We think it may be admitted that, standing alone, *Hough v. Easley*, 47 Ia. 330, supports the contention of plaintiff. The facts, however, were peculiar. There a deed of 1862 warranted against unpaid taxes. Those of 1860 and 1861 were delinquent. The grantee paid them and sued on his warranty. The defense was that the land had been sold for the taxes of 1864 and 1865, which sale discharged the lien of the previous years. The defense was upheld. The ruling is examined and criticised in *Adams v. Osgood*, 42 Neb. 450, 60 N. W. 869, which holds the contrary; as does *Cowell v. Washburn*, 22 Cal. 519. But Iowa herself refuses to cover with that rule such a transaction as that now before us.

"It certainly cannot be claimed, if the owner of lands should purchase the same at tax sale where part of the delinquent taxes were by mistake omitted from the sale, or redeem from a sale made to another, that this would operate as a discharge of prior delinquent taxes omitted from the sale by mistake." *Bowman v. Eckstien*, 46 Ia. 583.

In each of the other cases cited by plaintiff, including *Bennett v. Denver*, 70 Colo. 77, 197 Pac. 768; *Whitehead v. Desserich*, 71 Colo. 327, 206 Pac. 384, and *Boulder v. Plains R. & I. Co.*, 75 Colo. 86, 224 Pac. 233, the question arose between purchasers at tax sales. In no one of them was the owner of the fee attempting to play one

tax purchaser against another. Many of them, however, clearly indicate the basis of the decision.

"The interest that the *purchaser of lands at a tax sale* acquires is, in the absence of a statute to the contrary, freed from liability for delinquent taxes of previous years." *Emmons County v. Bennett,* 9 N. D. 131, 81 N. W. 22.

"A sale of land for taxes frees it, *in the hands of the purchaser,* from any and all liens thereon for delinquent taxes for prior years." * * *

"The city council estopped itself by the implications of the sale of 1885, and the silence with which it was conducted, from afterwards asserting it had an older unsatisfied lien on the same property, against *one who had purchased in good faith.*" *Thorington v. City Council of Montgomery,* 88 Ala. 548, 7 So. 363.

Being the plaintiff and having the affirmative, Mrs. Newmyer can only prevail by virtue of some right in herself. She has shown none. The judgment she asks, if granted, must be based upon her own wrong plus another's right. The construction of our revenue laws necessary to uphold her demand would open wide the door through which fraud might stalk to deplete the public revenue, if purchasers foolish enough to buy under such circumstances should continue to bid. The judgment is affirmed.

Mr. Chief Justice Whitford, Mr. Justice Butler and Mr. Justice Moore concur.